# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DONALD E. MITCHELL, JR., | Case No.: 2:17-cv-00686-APG-DJA |
| Plaintiff | **Order Granting in Part Defendants' Motion for Summary Judgment, Denying Plaintiff's Motion to Stay, and Denying Plaintiff's Motion for Relief** |
| v. | |
| STATE OF NEVADA, et al., | [ECF Nos. 25, 34, 42] |
| Defendants | |

Plaintiff Donald Mitchell, Jr. sues for two incidents that took place while he was a prisoner in a Nevada Department of Corrections (NDOC) facility. I previously screened Mitchell's complaint under 28 U.S.C. § 1915A and allowed his Count I retaliation claim and Count II retaliation and due process claims to proceed. Defendants Carrie Alvarado, Timothy Filson, Jerry Howell, Bianca Knight, Dwight Neven, and Perry Russell (collectively, the defendants) move for summary judgment on all remaining claims, arguing that Mitchell has not exhausted his administrative remedies, his claims are without merit, and the defendants are entitled to qualified immunity. Mitchell moves for a stay of this motion and relief from my prior dismissal of defendant Anthony Warren under Federal Rule of Civil Procedure 4(m).

Because Mitchell failed to exhaust administrative remedies with respect to his claims arising from the April 25, 2016 incident, I grant the defendants' motion for summary judgment on Count II. But I deny the defendants' motion on Count I against defendants Alvarado and Knight because they do not meet their initial summary judgment burden. And I deny Mitchell's motions because they are moot or futile.

/ / / /

/ / / /

## I. BACKGROUND[1]

Mitchell is an inmate at NDOC's High Desert State Prison (HDSP). ECF No. 4 at 1. On February 18, 2016, Mitchell and a correctional officer, Alvarado, engaged in a verbal dispute, during which Alvarado cursed out Mitchell. *Id.* at 4. In response, Mitchell told Alvarado that administrative regulations prohibited unprofessional conduct, and he requested a grievance. *Id.* at 5. Alvarado denied the request, telling Mitchell that he had a "trick for your ass." *Id.* Later that day, Mitchell's inmate classification was reduced from level three to level two and Mitchell was assigned to a cell with a notoriously violent inmate. *Id.* at 5-6. After Mitchell asked about the reduction, Knight told Mitchell that she hated inmates who filed grievances and referenced Mitchell's earlier encounter with Alvarado. *Id.* at 6. Mitchell's Count I retaliation claim arises out of this incident.

Three days later, Mitchell called an unidentified person and told her about the incident. ECF No. 26 at 3 (CD containing audio recording). That person asked Mitchell if he told the NDOC employee responsible for his level reduction about his violent potential cellmate. *Id.* Mitchell responded by stating "you already know what I did" and "do best." *Id.* The other caller responded, "[w]rite it up." *Id.* Mitchell then added, "I am going for a retaliation claim saying they put my safety in jeopardy." *Id.*

Count II of Mitchell's complaint arises out of another verbal altercation between Mitchell and Knight on April 25, 2016. ECF No. 4 at 8. Shortly after the dispute, Brown asked Mitchell if he had chest pains, explaining that Knight had told Brown that Mitchell was experiencing chest pains. *Id.* Mitchell denied having chest pains. *Id.* Knight then filed charges against Mitchell for

---
[1] These facts are alleged in Mitchell's complaint, which was signed under penalty of perjury. ECF No. 4 at 17. Both parties cited the complaint in their respective fact sections. ECF No. 25 at 2-5; ECF No. 29 at 5-8.

"Giving False Information" and "Delaying, Hindering, Interfering with Staff." *Id.* at 6-7; ECF No. 26 at 16. On June 4, 2016, Mitchell was found guilty on both charges. *Id.* at 12.

Mitchell filed an informal grievance regarding the April 25 incident. *Id.* at 33. After the informal grievance was denied, Mitchell filed a first-level grievance in July 2016, which was also denied. *Id.* at 29-30. Mitchell filled out a second-level grievance, which was stamped as received by the HDSP warden on September 5, 2016. *Id.* at 28. However, the second-level grievance was marked "[r]ejected – [r]e-file" on grounds that Mitchell failed to follow protocols and file the grievance in the grievance box or with a caseworker. *Id.* at 27-28. The grievance was returned to Mitchell, who signed for the memorandum rejecting the grievance on September 19, 2016. *Id.* While the initial grievance was pending, Mitchell filed another informal grievance relating to the April 25, 2016 incident. *Id.* at 63. Defendant Howell denied this grievance as duplicative of Mitchell's first grievance. *Id.* at 62.

In 2018, I issued an order screening Mitchell's complaint under 28 U.S.C. § 1915A. ECF No. 3. I found that Count I made out a viable retaliation claim against defendants Alvarado and Knight, and against defendants Filson and Bruce Stroud[2] based on supervisory liability for their role in responding to Mitchell's grievances. *Id.* at 4-6. I also determined that Count II made out viable retaliation and due process claims against defendants Knight, Neven, Russell, and Warren, and against defendants Howell and Stroud based on supervisory liability. *Id.* at 7-10. Alvarado, Filson, Howell, Knight, Neven, and Russell now move for summary judgment. ECF No. 25.

---

[2] The defendants state that Bruce Stroud is deceased and not a proper party to this matter. ECF No. 10 at 1 n.1. I order Mitchell to show cause by December 2, 2019 why Stroud should not be dismissed from this matter. Additionally, Stroud and Filson are named only in Count I and only in their supervisory capacities. As discussed below, I grant summary judgment in favor of Filson because he did not personally participate in a constitutional violation. So Mitchell also should explain why maintenance of his action against Stroud would not fail for the same reason.

3

## II. DISCUSSION

### A. Summary Judgment Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, discovery responses, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

"Courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). In *pro se* prisoner cases, summary judgment is disfavored when discovery requests for relevant evidence are pending. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (citing Fed. R. Civ. P. 56(f)). "Summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim." *Id.* (quoting *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988)).

### B. Exhaustion of Administrative Remedies for Count II

The defendants argue that Mitchell failed to exhaust administrative remedies with respect to his claims in Count II of his complaint. ECF No. 25 at 6-8. Mitchell responds that his failure to exhaust is excused by the defendants' retaliatory conduct and a conspiracy to violate his First Amendment rights. ECF No. 29 at 15. The defendants reply that Mitchell's numerous grievances demonstrate that NDOC made the grievance process available to him. ECF No. 32 at 2; *see also* ECF No. 27 (Mitchell's grievance history).

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

5

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

NDOC's grievance process is governed by Administrative Regulation (AR) 740. ECF No. 26 at 77-90. That process has three levels through which the inmate must proceed in order to exhaust: an informal grievance, first level, and second level. *Id.* Grievances that do not comply with AR 740 must be rejected and returned to the inmate for correction and proper filing. *Id.* at 81-82. "Each institution/facility shall establish locked boxes where all inmates have access to submit their grievances directly to the box." *Id.* at 77. "Grievances will be treated as legal correspondence and will be gathered daily . . . by the [Associate Warden] or designated Grievance Coordinator(s)." *Id.* And "[i]t is considered an abuse of the inmate grievance

procedure when an inmate files a grievance that contains . . . [s]pecific claims or incidents previously filed by the same inmate." *Id.* at 86.

Mitchell properly filed informal and first-level grievances protesting the April 25, 2016 incident. ECF No. 26 at 29-30, 33. His second-level grievance was stamped as received by the warden and rejected with instructions to re-file because he did not file the grievance with his caseworker or in the grievance box. *Id.* at 27-28. Mitchell did not re-file the second-level grievance. Mitchell had earlier filed a separate grievance relating to this same incident, but it was rejected as duplicative of his initial grievance. *Id.* at 62-63. The defendants have thus shown Mitchell failed to exhaust administrative remedies by not filing a proper second-level grievance. The burden shifts to Mitchell to show that administrative remedies were effectively unavailable.

Mitchell argues that retaliation excuses his failure to exhaust, but he does not explain how the defendants' conduct made administrative remedies effectively unavailable. Instead, the record shows that Mitchell could have re-filed the rejected second-level grievance but failed to do so. Mitchell's successful exhaustion of administrative remedies for the February 18, 2016 incident also undermines his contention that the defendants' retaliatory conduct made administrative remedies effectively unavailable. Because no genuine dispute remains that Mitchell failed to exhaust administrative remedies for the April 25, 2016 incident, I grant summary judgment in favor of the defendants on Count II.

### C. Count I Retaliation Claim

The defendants argue that Mitchell's Count I retaliation claim fails because he does not provide evidence of a retaliatory motive and because a contemporaneous call suggests he fabricated or exaggerated the charges. ECF No. 25 at 8-9. Mitchell argues that the defendants

retaliated against him for requesting a grievance by reducing his classification level and assigning him to a cell with a violent inmate. ECF No. 29 at 17-18.

Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A First Amendment retaliation claim has five elements. First, the plaintiff must show he engaged in activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). Second, the plaintiff must show the defendant took adverse action against him. *Id.* "The adverse action need not be an independent constitutional violation," and the "mere threat of harm" may suffice. *Id.* (emphasis and quotation omitted). "Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* A close proximity in time between the protected activity and the adverse action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Fourth, the plaintiff must show that the defendants' acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quotation omitted); *see also Jones v. Williams*, 791 F.3d 1023, 1036 (9th Cir. 2015) (applying standard on summary judgment). The plaintiff does not have to show that the defendant actually suppressed his speech. *Rhodes*, 408 F.3d at 568. Evidence "that his First Amendment rights were chilled, though not necessarily silenced, is enough . . . ." *Id.* at 569. However, the plaintiff must show the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted). Finally, the plaintiff must show that the defendants' retaliatory acts "did not advance legitimate goals of the correctional institution." *Id.* (quotation omitted).

The defendants argue that Mitchell offers no evidence of retaliatory intent. But the proximity between Mitchell's request for a grievance and his level reduction is circumstantial

evidence of retaliatory intent. *See Pratt*, 65 F.3d at 808.  And Mitchell alleges a retaliatory motive in his contemporaneous grievances, which the defendants do not rebut with evidence. *See* ECF No. 28 at 26-27 (February 2016 grievance record).

The defendants also argue that the call recording shows that the defendants' actions did not have a chilling effect on Mitchell's first amendment rights because he was eager to pursue a retaliation claim. ECF No. 25 at 9.  But "[b]ecause it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, [Mitchell] does not have to demonstrate that his speech was actually inhibited or suppressed." *Rhodes*, 408 F.3d at 569.  The recording can also be interpreted as evidence that Mitchell is just such a plaintiff.  To overcome summary judgment, Mitchell needs to show only that the defendants' acts would chill a person of ordinary firmness from future First Amendment activities.  A reasonable jury could find that the level reduction and placement with a violent cellmate would chill a reasonable person.  Because the defendants do not meet their initial burden on summary judgment, I deny the defendants' motion on this ground.

### D. Personal Participation

The defendants argue that defendants Filson, Neven, Russell, and Howell are named only in their supervisory capacities and should be dismissed because they did not personally participate in the constitutional violations. ECF No. 25 at 13.  Of these, only Filson is named in Count I.  Mitchell responds that these defendants personally participated in the due process violations, which he failed to exhaust administratively. ECF No. 29 at 21-24.  He does not address personal participation in the Count I retaliation claim.

A defendant is liable under § 1983 "only upon a showing of personal participation by a defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them. There is no *respondeat superior* liability under § 1983." *Id.* "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1991) (emphasis in original) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The denial of prisoner grievances alone is insufficient to establish personal participation under 42 U.S.C. § 1983." *West v. Cox*, No. 2:15-cv-00665-GMN-VCF, 2018 WL 5114127, at *4 (D. Nev. Oct. 18, 2018) (quotation omitted). But when a defendant becomes aware of a constitutional violation through the grievance process and fails to remedy it, he may be liable under § 1983. *See Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow,* the plaintiff's grievances made prison officials aware of his serious hip condition and that he was denied a hip replacement, but the prison officials failed to act to prevent further harm. *Id.*

Mitchell's Count I claim against Filson is based on his response to Mitchell's grievances protesting the February 18, 2016 incident. Unlike in *Snow*, the record does not show that Filson was in a position to remedy Alvarado and Knight's retaliatory conduct, which occurred on the same day of the verbal altercation. Filson was not present when the retaliatory conduct occurred and did not directly oversee Alvarado or Knight. Because Filson did not personally participate in the constitutional violation, I grant the motion for summary judgment in his favor.

### E. Qualified Immunity

The defendants' qualified immunity arguments largely relate to Count II, which Mitchell failed to exhaust administratively. But the defendants also argue in general terms that all defendants are entitled to qualified immunity "to the extent the liability alleged by Plaintiff consists of advancing legitimate correctional goals." ECF No. 25 at 16.

"Government officials are not entitled to qualified immunity if (1) the facts '[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendants'] conduct violated a constitutional right' and (2) the right was clearly established at the time of the alleged violation." *Jones*, 791 F.3d at 1033 (quoting *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014)) (alterations in original). "The law was clearly established [by 2016] that correctional officers violate the First Amendment by retaliating against prisoners for exercising the First Amendment right to file prison grievances." *Sawyer v. MacDonald*, 768 F. App'x 669, 672 (9th Cir. 2019) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). Because Mitchell's claim that the defendants violated a constitutional right by retaliating against him survives and that right is clearly established, I deny defendants' motion for summary judgment on this ground.

### F. Motion to Stay Summary Judgment

Mitchell moves to stay summary judgment under Rule 56(f)[3] pending his motions to compel and extend time for service and discovery, as well as his review of audio recordings cited in the summary judgment motion. ECF No. 34. The defendants respond that Mitchell's motion

---

[3] Mitchell requests relief under "Rule 56(f)." ECF No. 34. Rule 56(d) is the proper basis for his motion because "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendments.

11

is mooted by Magistrate Judge Hoffman's order addressing his motions and that they sent a copy of the audio recordings to HDSP. ECF No. 36.

Magistrate Judge Hoffman granted Mitchell's motion to extend time and denied his motion to compel in March 2019. ECF No. 35. Mitchell then filed another motion to extend time, which Judge Hoffman denied in May 2019. ECF No. 47. And the defendants provide evidence that they sent the audio recordings to Mitchell. ECF No. 36-1. So I deny Mitchell's motion to stay summary judgment as moot.

### G. Motion for Relief From Order Dismissing Warren

On April 10, 2019, I dismissed Mitchell's claims against defendant Anthony Warren under Rule 4(m). ECF No. 37. Mitchell moves for relief from my order, arguing that his placement in solitary confinement excuses his delay. ECF No. 42. Warren is named only in Count II of Mitchell's complaint, which Mitchell failed to exhaust administratively. Because Mitchell's claim against Warren would be futile, I deny Mitchell's motion.

## III. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 25) is GRANTED in part.** The motion is granted as to Mitchell's retaliation and due process claims in Count II of his complaint and his retaliation claims in Count I against defendant Filson. The motion is denied as to Mitchell's retaliation claim in Count I against defendants Alvarado and Knight.

I FURTHER ORDER that Mitchell's motion to stay summary judgment **(ECF No. 34) is DENIED as moot.**

I FURTHER ORDER that Mitchell's motion for relief from my order dismissing defendant Anthony Warren **(ECF No. 42) is DENIED.**

12

I FURTHER ORDER Mitchell to show cause in writing by December 2, 2019 why defendant Stroud should not be dismissed from this matter. If Mitchell fails to do so, I will dismiss Stroud from the case.

DATED this 23rd day of October, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE